(86 South. 665)

No. 23932.

## MANCEAUX v. HUNTER CANAL CO.

(Nov. 3, 1920.  Rehearing Denied Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** ⬅️705(2) — **Truck driver who attempted to pass buggy on right of it not responsible though violating law of road.**

If the driver of a buggy ahead of an auto truck had turned to the left, giving clear indication that he intended the truck to pass to his right, and then, when the truck had started so to do and had gotten where it could not stop or change course without collision, the driver of the buggy suddenly had turned in front of it by going to the right, the truck driver cannot be said to have been responsible for the collision,

though technically he would have violated the law of the road.

2. **Municipal corporations** ⬅️705(2)—**Chauffeur of auto truck who violated law of road negligent.**

Where the chauffeur of an auto truck in his haste to pass a buggy ahead decided that there was plenty of room to the right, but as he was going to the right the buggy pulled in ahead of him, so that he pulled to the left, but failed to clear the hind wheel of the buggy, collided with it, and killed the driver's wife, the chauffeur was negligent in thus violating the law of the road, and his employer is liable for the death.

3. **Death** ⬅️99(4)—**Award of $4,000 for wife's death too small.**

Award of $4,000 in favor of a husband suing as tutor ad hoc on behalf of his eight minor children for the negligent death of his wife and their mother *held* too small by $4,000.

O'Niell, J., dissenting in part.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Suit by Edgar Manceaux, as tutor ad hoc for his minor children, against the Hunter Canal Company. From judgment for plaintiff, defendant appeals. Amended to increase recovery, and affirmed.

Medlenka & Bruner, of Crowley, and Minor T. Gordy, of Abbeville, for appellant.

Smith & Carmouche, of Crowley, for appellee.

DAWKINS, J. The plaintiff prosecutes this suit as tutor ad hoc on behalf of his eight minor children (one of whom became a major before the trial) for the death of his wife and their mother, which he charges to have been caused through the fault and negligence of defendant. The answer admits the killing, but denies that defendant was at fault, and pleads contributory negligence on the part of deceased.

The case was tried before the judge without jury, and there was judgment in favor of plaintiff in the sum of $4,000. Defendant

appealed, and plaintiff has answered praying that the judgment be increased to $24,000.

## Statement of Case.

The plaintiff Edgar Manceaux and his wife, Elisa Mattean Manceaux, were traveling in a one-horse buggy along the public road at about 9 o'clock in the morning on a clear day. The horse was proceeding in a slow trot of between 4 and 5 miles per hour, and the buggy occupied a position a few feet to the right of the center of the road (which was about 35 feet wide), which was the most used portion thereof, and to its right there was a space of some 10 or 12 feet, sloping to a ditch, which had likewise been used but not so much as the portion the buggy was traveling. To the left there was a slight ridge in the center of the road, and from this ridge to the ditch on that side the road was covered with grass and small weeds and apparently had not been used for some time, although there seems to have been no particular reason therefor. A truck of 2½ tons capacity belonging to defendant, loaded with 25 sacks of rice weighing about 5,000 pounds, with four people thereon, and driven by one Frank McDaniels, an employé, approached the buggy from the rear, at a speed estimated at about 6 miles per hour. The chauffeur sounded his horn about 150 feet away, and again when within 40 to 60 feet of the buggy. To this point, there is no dispute in the evidence, but henceforward it is conflicting. McDaniels says that, when he first blew, Manceaux looked back and, after a short interval turned to the left; that he (the chauffeur) took this to mean that the driver of the buggy intended that he should pass to the right, which he started to do, but that when the truck had gotten within 12 or 15 feet of the buggy the latter also suddenly turned to the right, and he (McDaniels), seeing that a collision would result if he continued in that direction, threw out his clutch, put on his brake, and swerved to the left in the hope of missing the buggy, but that the right front wheel of the truck struck the left hind wheel of the buggy, tore it off, threw plaintiff and his wife out, and the front wheel of the truck passed over the head and neck of Mrs. Manceaux, killing her almost instantly. On the other hand, Manceaux says that he did not hear the horn; that the top of his buggy was up, he never looked back, and the first knowledge he had of the truck's approach was when he heard a noise which sounded like an automobile; and that he did not turn to the left, but within a few moments turned to the right to permit the car to pass on his left, in accordance with what he understood to be the law of the road, and in accordance with his uniform custom.

[1, 2] Of course, if Manceaux had turned to the left and thereby given clear indication that he intended the truck should pass on his right, and then, when the latter had started to do so and had progressed to a point where it could not stop or change its course without a collision, the buggy had suddenly turned in front of it, we do not think the driver of the truck could be said to have been responsible for the collision, although, technically, he would have violated the law of the road, as it would have been the imprudent act of the driver of the buggy that caused the accident. However, none of the three persons who were riding on the truck with McDaniels, although they were looking ahead saw Manceaux either look back or turn to the left; but all state that his first turn was to the right. Then, again the circumstances and probabilities are against McDaniels' version of the matter. It does not seem reasonable that Manceaux would have attempted to pull over the ridge to his left into the weeds an unused part of the road, when the well-known and almost universally observed rule required that he turn to the right, on which side there was a space already fairly well

used. All agree that he was a little slow in commencing to turn, and we think the driver of the truck, desiring to pass the slower moving vehicle, decided that there was plenty of room on the right along the used part of the road, and that he would take the chance of passing on that side. Unfortunately, the buggy pulled in a head of him at a moment when he could not continue in that direction without striking it, when he instantly attempted to do the next best thing, and that was to pull to the left, but failed to clear the hind wheel of the buggy and the collision followed. The lower judge who saw and heard the witnesses evidently took this view. In these circumstances, the chauffeur was guilty of negligence, in violating the law of the road and in not exercising proper care in attempting to pass the buggy, and his employer is liable. Avegno v. Hart, 25 La. Ann. 235, 13 Am. Rep. 133; Cent. Dig. vol. 25, verbo Highways, p. 1937, § 465. It was his duty to have made sure of his position, either to have waited until he was sure of the course of the buggy or to have approached with his truck under such control as to stop promptly and avoid collision.

[3] We think Mrs. Manceaux was rendered unconscious immediately when the wheel of the truck passed over her, as the only evidence of life which she gave during the few moments thereafter was the spasmodic jerks and quiverings of her body which indicated that her neck had been broken. However, in view of the loss to the children her death occasioned, we think the amount allowed is too small, and should be increased to $8,000.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by increasing it to $8,000, and as thus amended it is affirmed; defendant to pay all costs.

O'NIELL, J., dissents from the decree increasing the amount of the judgment.