## SAUCIER et al. v. LANIER AUTO CO.

### No. 5669.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Samuel Moreau and Gremillion & Gremillion, all of Marksville, for appellees.

DREW, Judge.

The three plaintiffs, Albert V. Saucier, his mother and his sister, filed this suit to recover damages from the Lanier Auto Company as the result of an automobile collision which occurred in Avoyelles Parish, Louisiana, the residence of plaintiffs. Plaintiffs contend that the accident was caused by the negligence of one E. P. Chatelain, who was driving defendant's car at the time, and that he was acting within the course and scope of his employment with the defendant at the time of the accident.

The defendant admits that Chatelain was in its general employ as a second-hand car salesman, but at the time of the accident he was not engaged in any business for defendant company, and was on a pleasure trip visiting his wife's relatives. It further denied any negligence on the part of Chatelain and alleged the cause of the accident was the gross negligence of Albert Saucier, and that his negligence was the sole proximate cause of the accident.

The lower court awarded judgment for all three plaintiffs in a sum totaling $7,-110, and defendant is prosecuting this appeal.

We are convinced that both defenses are well founded. It is, however, necessary to discuss only one of them and we prefer to base our opinion upon the lack of negligence shown on the part of Chatelain, the driver of defendant's car.

The judge of the lower court has drawn a sketch showing the main highway, the roads making off from it, the houses on the side of the highway, and the distances material to a decision of the case, covering the locality where the collision occurred. This drawing was placed in the record by agreement of counsel and is admitted to be correct.

The paved highway between Marksville and Alexandria, at the place of the accident, runs east and west. On the south side of the road, approximately twenty feet west of where a dirt road makes off to the southeast, is located Dalton Dauzat's residence. The residence is south of the road some twenty or thirty yards. Directly opposite Dauzat's residence and on the north side of the road is a dirt road which makes off from the highway in a northwest direction. Directly in front of the Dauzat house there was an automobile, owned by Robert Lachenaye, parked on the south shoulder of the road. Three young ladies were seated in the back seat of this car and two men were standing around it talking. The occupants of the car were waiting for Chatelain to arrive, as one of the young ladies was going to return to Alexandria with him to visit his wife, who was her aunt. The width of the highway is not shown but we can well assume it is a concrete slab eighteen feet wide, which is the regulation width. Chatelain was driving east on the highway for the purpose of picking up the young lady who was waiting for him by appointment, after which he intended turning his car around and heading west for Alexandria. When he saw she was waiting for him he intended to pull to his right into the dirt road some twenty feet east of the parked car, back out, and make his turn before stopping to let her get in. As he was passing the parked car he was traveling at a slow rate of speed and pulled his car to his left and to the center of the road due to those who were standing around the car and for their safety. After passing the car a few feet he started to and did partially turn his car again to the right to enter the dirt road on his right side. At this moment he heard the brakes applied by plaintiff and saw plaintiff's car by use of his rear view mirror. It was at that time a short distance behind him, traveling in the same direction as he was, i. e., east. He saw plaintiff was going to attempt to pass to his right and that a collision was inevitable. At that moment he attempted to turn his car again to the left out of the path of plaintiff's car. The time was too short and the front of plaintiff's car rammed the right rear fender of defendant's car, forcing it farther to the left. Plaintiff's car turned over in

the road at least twice and stopped upside down with all four wheels in the air.

There was no negligence on the part of the defendant's driver in pulling his car near to the center of the road when passing the parked automobile with people standing around it talking. It was his duty to do that very thing. There was no negligence in attempting to turn to the right after passing the parked car, even though he had not intended turning into the dirt road on his right side. It was his duty to get back entirely on his right side of the road. There is no doubt as to his intention to turn into the dirt road on his right. In attempting to turn into the dirt road instead of obstructing the path of anyone who wished to pass him, he was clearing their proper path. He could not be held to have anticipated that one behind him would attempt to illegally pass to his right.

We find, therefore, that the driver of defendant's car was free of any negligence, and the facts above set forth are overwhelmingly established by the evidence. This, of course, disposes of the case, but we will discuss the contention and testimony of plaintiff Albert Saucier. His testimony alone would bar a recovery. He testified that he saw defendant's automobile a distance of two or three hundred yards ahead of him; that it was being driven in a "funny" way, driving from one side to the other; that he blew his horn (no one else testified to horn blowing); that about that time Chatelain left the right side and went to the left as if he were going into the cross road to the left, giving plaintiff a clear road to the right, and when he, plaintiff, got close to defendant's car it went back to the right; that he attempted to pass to defendant's right and the collision occurred. He testified he was driving forty miles per hour when the collision occurred and that he never saw the parked car and the men standing around it; that Chatelain gave no signal for a left turn, yet he presumed he was going into the road to the left of the highway. He knew there was a dirt road leading off to the right. No signal was necessary for Chatelain to turn into the right road. We now quote from Saucier's testimony on cross-examination:

"Q. Mr. Saucier I understand that you saw Mr. Chatelain's car ahead of you two or three hundred yards away and driving, as you say, in a funny way; in other words it attracted your attention particu-

larly as being driven in a peculiar manner? A. Yes sir.

"Q. It was going from one side of the road to the other; if you saw that Mr. Saucier, why didn't you stop your car? A. I tell you I had my right-of-way. You know I have my rights on the highway.

"Q. And you insisted on those rights on this occasion? A. Not more than my rights.

"Q. As I understand, Mr. Saucier, you had the right-of-way and you were going to insist on it? A. I tried to avoid it.

"Q. You did everything except stop. Is that right? A. I could not stop just then.

"Q. Why? You did not make any effort to stop, did you? A. I slowed down and was going to stop until I saw there was an opening and I wanted to take it."

Clearly, under this testimony if we were to assume it shows a true picture of what happened, plaintiff could not recover. It was gross negligence for plaintiff to continue at a rapid rate of speed under the conditions he claims to have seen ahead of him. It was his duty if that condition prevailed to have brought his car completely under control so that he might have stopped it in a moment. He should have stopped it if it was necessary to avoid a collision. When he took a chance and attempted to dart through what he thought was an opening to the right of defendant's car, he was grossly negligent. Before he attempted to pass to the right of defendant's car he should have made sure that it was going to turn off the highway to the left. He had no right to assume that to be the intention of defendant's driver. It seems to us that Mr. Saucier was not keeping a proper lookout. If he had been he could not have failed to see the car parked on the right shoulder with people standing around it. It was only a few feet from the locus of the collision and there is no doubt about its being there. The preponderance of the testimony is that Mr. Saucier was traveling much faster than he claims to have been. Under any view we might take of the case we fail to see how defendant can be held liable for the damages sustained by the three plaintiffs.

The judgment of the lower court is erroneous and it is now reversed and the demands of the plaintiffs are rejected at their cost in both courts.